IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:12-CV-223-FL

| | |
|---|---|
| ANN M. PUSHKAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Ann M. Pushkal ("plaintiff") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") on the grounds that she is not disabled.[1] The case is before the court on the parties' respective motions for judgment on the pleadings. (D.E. 21, 24). Each party filed a memorandum in support of its motion (D.E. 22, 25). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Minute Entry dated 16 Jan. 2013). For the reasons set forth below, it will be recommended that plaintiff's motion be allowed, the Commissioner's motion be denied, and this case be remanded.

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

**I.  BACKGROUND**

   **A.  Case History**

Plaintiff filed applications for DIB and SSI on 10 July 2006 alleging a disability onset date of 25 May 2005.  Transcript of Proceedings ("Tr.") 261, 267.  The applications were denied initially and upon reconsideration, and a request for hearing was timely filed.  Tr., *e.g.*, 128.  On 9 April 2009, a hearing was held before an Administrative Law Judge ("ALJ").  Tr. 33-74, 128.  In a written decision dated 4 May 2009, the ALJ found that plaintiff was not disabled and therefore not entitled to DIB or SSI.  Tr. 128-37.  Plaintiff timely requested review by the Appeals Council, and, on 23 December 2009, the Appeals Council granted review, vacated the ALJ's decision, and remanded the case to the ALJ for resolution of certain issues.  Tr. 142-47.

On remand, a second hearing was held on 18 March 2010 before the ALJ.  Tr. 75-120.  In a written decision dated 4 June 2010, the ALJ found, again, that plaintiff was not disabled.  Tr. 13-31.  Plaintiff again sought review by the Appeals Council.  Tr. 8-9.  The Appeals Council denied the request for review on 27 February 2012.  Tr. 1-5.  At that time, the decision of the ALJ became the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.  Plaintiff commenced this proceeding for judicial review on 26 April 2012, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  (*See In Forma Pauperis* Mot. (D.E. 1); Order Allowing Mot. (D.E. 4); Compl. (D.E. 5)).

   **B.  Standards for Disability**

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also* 42

U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see also* 42 U.S.C. § 1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [§ 404.1509 for DIB and § 416.909 for SSI], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . .

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

### C. Findings of the ALJ

Plaintiff was 30 years old on the alleged onset date of disability and 35 years old on the date of the administrative hearing. Tr. 24 ¶ 7; 82. The ALJ found that she has "at least a high school education." Tr. 24 ¶ 8; 82-83.[2] Her past work includes employment as an administrative clerk, a cashier/checker, and a salesclerk. Tr. 24 ¶ 6; 83-85, 107.

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. Tr. 15 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: fibromyalgia and depression. Tr. 15 ¶ 3. At step three, the ALJ found that plaintiff's impairments did not meet or medically equal any of the listings. Tr. 16 ¶ 4.

---

[2] Plaintiff testified at the administrative hearing that she had attended school up to the twelfth grade, but did not graduate or obtain a high school equivalency degree. Tr. 82-83. She further testified, however, that she had taken some online college classes. Tr. 82-83.

The ALJ next determined that plaintiff had the RFC to perform a "wide" range of light work[3] with certain limitations. Tr. 17 ¶ 5. The specific limitations imposed by the ALJ are as follows:

> [T]he claimant has the residual functional capacity to sit 4-6 hours during an eight-hour workday; stand and walk 4-6 hours; lift and carry 20 pounds occasionally; bend, crouch, and stoop occasionally; climb ramps and stairs occasionally; reach, handle, and grasp without restriction; finger and manipulate occasionally but not frequently; perform jobs that allow for no visual limitations; perform jobs that allow for no limitations in hearing and speaking; perform jobs which do not expose her to heights or machinery; and perform jobs which allow for a sit/stand option. . . . The claimant was also limited by her depression to performing simple, repetitive, routine tasks ["SRRT's"], performing jobs requiring less than complex decision making, constant change or dealing with crisis situations. She is not significantly limited in the mental ability to understand, remember, and carry out simple instructions, to use judgment, to respond appropriately to limited moderate supervision, limited moderate social interaction with coworkers, and usual work situations, and to deal with changes in a routine work setting.

Tr. 17 ¶ 5.

Based on this RFC, the ALJ found at step four that plaintiff was not capable of performing her past relevant work. Tr. 24 ¶ 6. At step five, the ALJ accepted the testimony of a vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of cleaner (housekeeping), laundry classifier, and spice mixer. Tr. 25 ¶ 10; 110. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 23 ¶ 11.

---

[3] Light work involves lifting up to 20 pounds occasionally and lifting and carrying 10 pounds frequently. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b); *see also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "L-Light Work," http://www.oalj.dol.gov/libdot.htm (last visited 30 August 2013). "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. §§ 404.1567, 416.967.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131

F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

B. **Overview of Plaintiff's Contentions**

Plaintiff contends that the ALJ erred by: (1) failing to properly handle evidence from plaintiff's treating psychiatrist, Neil Scheurich, M.D., and treating therapist, Holly Heath-Shepard, L.C.S.W., both of the New Leaf Behavioral Health clinic ("New Leaf"); (2) failing to re-contact Dr. Scheurich and plaintiff's treating physician, David Adams, M.D., for clarification of their medical records; (3) rejecting the medical source statement ("MSS") signed by a nurse in the office of Dr. Adams; (4) posing to the vocational expert a hypothetical that failed to account for plaintiff's limitations in the ability to manipulate objects and maintain pace, and failed to specify the frequency with which she needed to alternate between sitting and standing; (5) finding that plaintiff has the mental capacity to perform the work of a laundry classifier and spice mixer; and (6) assessing plaintiff's RFC before assessing the credibility of her testimony. Because the court finds that the issue of the ALJ's handling of the medical opinion evidence from New Leaf is dispositive of this appeal, it addresses below only that issue.

C. **ALJ's Handling of Medical Opinion Evidence from New Leaf**

1. *Overview of Treating Relationship with New Leaf*

Dr. Scheurich and therapist Heath-Shepard are the only mental health providers who treated plaintiff. Evidence from them therefore occupies a unique position in this case given the special insights a treating relationship can provide into a claimant's impairment and limitations. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Plaintiff was initially assessed and a treatment plan developed for her at New Leaf on 29 July 2009. *See* Tr. 715-24. Dr. Scheurich thereafter saw her once for diagnosis and assessment,

on 8 October 2009 (Tr. 772-73), and four times for about a quarter hour for medication management, on 17 October 2009 (Tr. 753), 19 November 2009 (Tr. 757), 21 January 2010 (Tr. 745), and 25 February 2010 (Tr. 735). Dr. Scheurich also completed a MSS on plaintiff on 18 March 2010 (Tr. 709-13).

Therapist Heath-Shepard prepared the initial assessment of and treatment plan for plaintiff on 29 July 2009 (Tr. 715-29) and thereafter saw her on almost a weekly basis, usually for two-hour counseling sessions, through 10 March 2010. Tr. 731-32, 734, 740, 742, 744, 746, 747-48, 750-51, 754, 758-59, 762-63, 766, 768, 770, 774, 778, 781-85, 789. Therapist Heath-Shepard also had numerous telephone contacts with plaintiff. Tr. 736, 739, 741, 743, 756, 761, 764-65, 769, 776-77, 780, 786, 790-91.

The mental health issues for which plaintiff was receiving treatment at New Leaf included those arising from child custody proceedings against her. *See* Tr., *e.g.*, 21 ¶ 5; 719, 721, 772. These proceedings, which apparently resulted in the removal of her son from her home, arose from concerns raised by her ex-boyfriend about possible abuse by her of her son resulting from Munchausen's syndrome by proxy syndrome[4] or factitious disorder.[5] *See* Tr., *e.g.*, 21 ¶ 5; 719, 721, 772.

---

[4] Munchausen's syndrome or factitious disorder by proxy, is characterized by "the deliberate production or feigning of physical or psychological signs or symptoms in another person who is under the individual's care" which is motivated by a "psychological need to assume the sick role by proxy." Am. Psych. Assn., Diagnostic and Statistical Manual of Mental Disorders 707 (4th ed. text rev. 2000) ("DSM-IV-TR") 781. "Typically the victim is a young child and the perpetrator is the child's mother." *Id*.

[5] Factitious disorders are "characterized by physical or psychological symptoms that are intentionally produced or feigned in order to assume the sick role." DSM-IV-TR 513. Factitious disorder are distinguished from malingering in that "the motivation is a psychological need to assume the sick role, as evidenced by an absence of external incentives for the behavior," such as to feigning illness to avoid jury duty. *Id*.

8

Case 5:12-cv-00223-FL   Document 26   Filed 08/30/13   Page 8 of 18

### 2. *Standards for Evaluation of Medical Opinion Evidence*

The standards for evaluating the opinions of Dr. Scheurich and therapist Heath-Shepard are well established. Under the Regulations, medical opinions are defined as "statements from physicians [including psychiatrists] . . . or other acceptable medical sources[6] that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled. *See id.* §§ 404.1527(b), 416.927(b); *Nicholson v. Comm'r of Social Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D. W. Va. 2009) ("Pursuant to 20 C.F.R. §§ 404.1527(b), 416.927(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").

The Regulations provide that opinions of treating physicians, including psychiatrists, on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques, and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. R. 96-2p, 1996 WL 374188, at *2 (2 July 1996). The reason is that the treating sources are likely to be those "most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §§

---

[6] "Acceptable medical sources" means licensed physicians and licensed or certified psychologists and, for certain specified purposes, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. §§ 404.1513(a), 416.913(a).

404.1527(d)(2), 416.927(d)(2). If a medical opinion of the treating source is not given controlling weight, the Regulations prescribe factors to be considered in determining the weight to be ascribed: the length of the treating relationship and frequency of the visits; the consistency of the opinion with other evidence; the extent of relevant supporting evidence presented by the source; the sufficiency of the explanation provided for the opinion; any relevant specialization of the sources; and any other factors tending to support or refute the opinions. Soc. Sec. R. 06-03p, 2006 WL 2329939, at *4-5 (9 Aug. 2006) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)).

An ALJ's decision "must contain specific reasons f or the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e); Soc. Sec. R. 96-5p, 1996 WL 374183, at *2, 5 (2 July 1996). But these opinions must still be evaluated and accorded appropriate weight. *See id.* at *3.

The same factors used to determine the weight to be accorded the opinions of physicians (and other acceptable medical sources) apply to the opinions of providers who are deemed to be at a different professional level (or so-called "other sources"), such as psychological counselors or therapists. *See* Soc. Sec. R. 06-03p, 2006 WL 2329939, at *4; *see also* 20 C.F.R. §§ 404.1527(d), 416.927(d). As with opinions from physicians, the ALJ must explain the weight given opinions of other sources and the reasons for the weight given. *See* Soc. Sec. R. 06-03p, 2006 WL 2329939, at *6 ("[The ALJ] generally should explain the weight given to opinions

from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."); *Napier v. Astrue*, No. TJS-12-1096, 2013 WL 1856469, at *2 (D. Md. 1 May 2013) ("[T]he ALJ is required to 'explain in the decision the weight given to . . . any opinions from treating sources, non-treating sources, and other non-examination sources who do not work for the [the Social Security Administration].").

### 3. *ALJ's Evaluation Dr. Scheurich's MSS and therapist Heath-Shepard's Opinions*

As summarized by the ALJ, the findings by Dr. Scheurich in his five-page MSS of 18 March 2010 included the following:

> The claimant's global assessment of functioning was 55 and had reached 70 in the past year. A 55 score indicates only moderate symptoms. His working diagnosis at that time was post traumatic stress disorder ["PTSD"], attributed to childhood trauma and borderline personality disorder. She had exhibited a pattern of high anxiety, mood lability and difficulty managing anger and her long term prognosis was fair. He stated the claimant did not have a low IQ or reduced intellectual functioning. He indicated marked loss of her ability to perform above the unskilled work level but no more than moderate impairment for simple, repetitive, routine tasks, dealing with the public, working at a consistent pace or completing a normal work day or work week. There was only a slight restriction of activities of daily living.

Tr. 23 ¶ 5.

In addition, Dr. Scheurich found, among other things, that plaintiff had marked difficulties in maintaining social functioning (Tr. 713) and repeated "[e]pisodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors)" (Tr. 713). He also made numerous more specific findings regarding plaintiff's functional capacities and limitations, including almost all the specific

findings covered in the Mental RFC Assessment Form. *Compare* Dr. Scheurich's MSS, Tr. 711-12 ¶¶ 13-14 *with* Mental RFC Assess. Form, Tr. 540-41, nos. 1-20.

The ALJ's analysis of Dr. Scheurich's MSS consists of six findings critical of several of Dr. Scheurich's opinions, as follows:

> [1] [Dr. Scheurich's] finding of marked difficulties in maintaining social functioning would only be consistent with his own treatment notes and those of the therapists he oversees as to [plaintiff's] family relationships. [2] Nor has the [plaintiff] experienced repeated episodes of deterioration or decompensation in the records he provided or in the longitudinal medical evidence of record. [3] Dr. Scheurich's opinion expressed is conclusory, providing very little explanation of the evidence relied on in forming that opinion. [4] In fact the only place a borderline personality disorder appears is in the completed medical source statement and [5] he did not mention [PTSD], only anxiety disorder, in his contemporary treatment notes. [6] While Dr. Scheurich expressed an opinion that the severity of the claimant's symptoms and frequent episodes of decompensation, his opinion is without substantial support from the other evidence of record, which renders it unpersuasive.

Tr. 23 ¶ 5.

Plaintiff contends that the ALJ erred in not giving portions of Dr. Scheurich's MSS controlling weight. Although the court expresses no opinion on whether the MSS should have been accorded controlling weight, it agrees that the ALJ erred in his handling of the MSS. The court also agrees with plaintiff that the ALJ erred in his handling of the opinions of therapist Heath-Shepard relating to Dr. Scheurich's MSS and otherwise.

One of the findings the ALJ makes with respect to the MSS is unintelligible on its face: "While Dr. Scheurich expressed an opinion that the severity of the claimant's symptoms and frequent episodes of decompensation, his opinion is without substantial support from the other evidence of record, which renders it unpersuasive." Tr. 23 ¶ 5. This obviously incomplete statement fails to identify the specific opinion to which the ALJ is referring and it is not otherwise apparent. It may be that the ALJ intended to say "an opinion *about* the severity . . . .,"

12
Case 5:12-cv-00223-FL   Document 26   Filed 08/30/13   Page 12 of 18

collectively to Dr. Scheurich's opinions, rather than "an opinion *that* the severity . . . ." In that event, the sentence would express a complete thought. But it is not the court's role to speculate about whether the ALJ actually intended something other than what he said and what the intended but unexpressed meaning might be. Moreover, the characterization that this unspecified opinion is "unpersuasive" does not clearly indicate what weight, if any, the ALJ gave it. With respect to this opinion, the ALJ's decision falls far short of "mak[ing] clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 WL 374188, at *5.

A similar problem afflicts the ALJ's determination that "[Dr. Scheurich's] finding of marked difficulties in maintaining social functioning would only be consistent with his own treatment notes and those of the therapists he oversees as to her family relationships." Tr. 23 ¶ 5. This finding could mean that Dr. Scheurich's own treatment notes and those of the therapists for plaintiff's family relationships whom Dr. Scheurich oversees show that she has marked difficulties in social functioning, but that is the only evidence of record that does. This appears to be the interpretation accorded the finding by the parties. (Plf.'s Mem. 13; Comm'r's Mem. 7 (referring to "[t]he inconsistency of Dr. Scheurich's finding of marked difficulties with much of the evidence"). But the ALJ's finding could also mean, more narrowly, that the two sets of notes show marked difficulties of social functioning and are thereby consistent, but only in the area of family relationships. Under this interpretation, this finding does not address other evidence relating to difficulties by plaintiff in social functioning. There does not appear to be a principled basis on which to select which of these two disparate meanings was intended.

Also problematic is the ALJ's finding that "the only place a borderline personality disorder appears is in the completed [MSS]." Tr. 23 ¶ 5. This is the only finding by the ALJ

13

expressly explaining his apparent rejection of this diagnosis—he did not find it a severe impairment—by the only psychiatrist who treated plaintiff. Nevertheless, taken literally, this finding is factually incorrect. In her treatment notes, therapist Heath-Shepard repeatedly finds that plaintiff has symptoms consistent with borderline personality disorder or that it needs to be ruled out as a diagnosis. Tr. 731-32, 734, 740, 742, 744, 746-48, 750, 759, 768, 770, 778; *see also* Tr. 763 (identifying borderline personality disorder as a condition for which therapist would continue to assess plaintiff), 766 (same).

It is apparent, though, that the ALJ is familiar with therapist Heath-Shepard's notes since he refers to them in connection with his finding on difficulties in social functioning (Tr. 23 ¶ 5) and provides a summary of her 29 July 2009 initial assessment of plaintiff and 21 January 2010 review of plaintiff's treatment plan elsewhere in his decision (Tr. 21 ¶ 5; 715-24, 725-29). Therefore, in making his finding, the ALJ may be referring, not to the record as a whole, but only to Dr. Scheurich's records. That is, the ALJ may mean that borderline personality disorder is mentioned by Dr. Scheurich only in his MSS and not his treatment notes. That statement would appear to be true. *See* Tr. 735, 745, 753, 757, 772-73.

It is questionable, however, whether that is a legally sufficient explanation for rejection of the borderline personality disorder diagnosis. That finding itself does not take into account the evidence of borderline personality disorder found in therapist Heath-Shepard's notes. The ALJ does not otherwise indicate the weight he accorded therapist Heath-Shepard's findings on borderline personality disorder. In effect, the ALJ appears to be rejecting Dr. Scheurich's diagnosis of borderline personality disorder in the MSS because he did not mention it in his treatment notes, while seemingly ignoring the numerous findings that plaintiff had symptoms of

Case 5:12-cv-00223-FL   Document 26   Filed 08/30/13   Page 14 of 18

borderline personality disorder in the treatment notes of a therapist who worked under Dr. Scheurich.

Further, the ALJ's disregard of therapist Heath-Shepard's treatment notes with respect to Dr. Scheurich's borderline personality diagnosis contrasts with his consideration of the therapist's notes regarding social functioning. The ALJ does not explain this inconsistency, and the reason is not otherwise apparent.

The ALJ's treatment of the records of Dr. Scheurich and those of therapist Heath-Shepard separately suggests that the ALJ assumed or determined Dr. Scheurich not to have reviewed or relied on the therapist's records in developing the opinions in his MSS, but he makes no explicit determination on this issue. Dr. Scheurich himself did not state in his MSS whether or not he had reviewed or was adopting the findings in therapist Heath-Shepard's treatment records. Notably, in one prior instance, his 8 October 2009 assessment of plaintiff, Dr. Scheurich did expressly indicate his review of therapist Heath-Shepard's records. Tr. 772. Nevertheless, the respective roles of Dr. Scheurich and therapist Heath-Shepard—treatment and medication overseer, and principal treatment provider—suggest that it would have been natural for Dr. Scheurich to review and rely on therapist Heath-Shepard's findings to some degree. The extent to which, if any, the ALJ relied on therapist Heath-Shepard's treatment records in forming his opinions in the MSS certainly appears to be a material factor in evaluating those opinions, particularly in light of Dr. Scheurich's own limited contact with plaintiff and therapist Heath-Shepard's extensive contact. The failure of the ALJ to make an explicit finding on this issue leaves in doubt whether he considered it and, if so, his resolution of it, as the contrary positions taken by the parties indicate. Plaintiff argues that Dr. Scheurich did adopt therapist Heath-

Shepard's findings in his MSS (Pl.'s Mem. 13),[7] whereas the Commissioner argues that he rejected them (Comm'r's Mem. 8-9).[8]

A situation similar to that regarding the ALJ's finding with respect to borderline personality disorder exists with respect to the ALJ's finding on PTSD, that Dr. Scheurich "did not mention [PTSD], only anxiety disorder, in his contemporary treatment notes." Tr. 23 ¶ 5. As with borderline personality disorder, the ALJ did not recognize PTSD as a severe impairment of plaintiff, and this is the only finding by the ALJ expressly explaining his rejection of that diagnosis. While the ALJ's finding is factually true (*see* Tr. 735, 745, 753, 757, 772-73), therapist Heath-Shepard repeatedly found that plaintiff's symptoms are consistent with PTSD or that PTSD had to be ruled out (Tr. 754, 758-59, 762, 768, 770, 774, 778, 781-82). With a single exception (Tr. 749), she listed PTSD as her diagnosis for plaintiff from 10 December 2009 onward. Tr. 731-32, 734, 740, 742, 744, 746, 747-48, 750-51. The ALJ does not mention these findings by therapist Heath-Shepard in his analysis of Dr. Scheurich's PTSD diagnosis. Nor does he indicate elsewhere the weight he accorded them and the reasons therefor. Thus, the same problems that beset the ALJ's finding regarding borderline personality disorder afflict his finding regarding the PTSD diagnosis.[9]

It is not only with respect to borderline personality disorder and PTSD that the ALJ fails to specify the weight he accorded the opinions of therapist Heath-Shepard and the reasons for such weight. Aside from his reference to therapist Heath-Shepard's records in his ambiguous

---

[7] "It is plain that Dr. Scheurer [sp], *having treated Pushkal*, adopted Heath-Shepard's notes regarding PTSD and personality disorder as his own." (Pl.'s Mem. 13).

[8] "Dr. Scheurick [sp] made a conscious decision to not reference or allude to the information in Ms. Heath-Shepard's notes. . . . The ALJ then sensibly determined that based on the aforementioned absence of information, Dr. Scheurick [sp] gave less weight to Ms. Heath-Shepard's notes." (Comm'r's Mem. 8-9) (record citations omitted).

[9] The court recognizes that the diagnosis of a condition, alone, is insufficient to prove disability, because there must also be "a showing of related functional loss." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). Nonetheless, a diagnosis is manifestly fundamental to evaluating the nature and potential severity of a claimant's functional loss.

finding regarding plaintiff's social functioning, the ALJ does not address the weight he accorded therapist Heath-Shepard's findings or the reasons therefor at all. The failure is significant because, as indicated, she was the principal mental health treatment provider to plaintiff. Moreover, the treatment relationship was an intense one. In all, over a period of greater than 7 months, she had 26 sessions with plaintiff totaling more than 54 hours—46.25 for counseling; 5.0 for multidisciplinary planning with county personnel, plaintiff's sister, and others involved in child custody proceedings against plaintiff; and 3.0 for assessment—in addition to numerous telephone contacts. Tr. 730-34, 736-44, 746-52, 754-56, 758-71, 774-91. Through these interactions, therapist Heath-Shepard observed plaintiff and was able to assess her in a variety of social settings, including plaintiff's home, where most of the counseling sessions were held; the interdisciplinary meetings with county personnel and others; and even court, to which therapist Heath-Shepard had been subpoenaed to testify on plaintiff's behalf in the child custody proceedings (*see* Tr. 730). It is noteworthy that toward the end of all the treatment therapist Heath-Shepard provided, on 21 January 2010, she found plaintiff to have made only minimal improvement (Tr. 728), as the ALJ himself noted (Tr. 23 ¶ 5). This, though, is among the findings the significance of which the ALJ leaves unexplained.

In short, with respect to the MSS of Dr. Scheurich, plaintiff's sole treating psychiatrist, four of the six reasons stated by the ALJ for rejecting, to one degree or another, opinions in it have material deficiencies. Moreover, the ALJ broadly failed to indicate the weight he accorded the findings of therapist Heath-Shepard, plaintiff's principal mental health treatment provider, or the reasons therefor.

These failings by the ALJ contravene his obligation to make clear the weight he gave the opinions of Dr. Scheurich and therapist Heath-Shepard. They also make it impossible for the

court to determine whether substantial evidence supports the ALJ's decision. The decision must accordingly be remanded for further proceedings. In making this determination, the court expresses no opinion on the weight that should be accorded any piece of evidence. That is a matter for the Commissioner to decide.

## III. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion (D.E. 21) for judgment on the pleadings be ALLOWED, the Commissioner's motion (D.E. 24) for judgment be DENIED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Recommendation.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until 6 September 2013 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within seven calendar days after service of the objections on the responding party, but in no event later than 13 September 2013.

This, the 30th day of August 2013.

_____
James E. Gates
United States Magistrate Judge